## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

**O.W., individually and as the parent and
guardian of G.Y., a minor child,**

       **Plaintiff,**

**v.**                             **Civ. Action No.** <u>3:24-cv-00070</u>


**CABELL COUNTY BOARD OF
EDUCATION, RONALD MAYES, AMY
GIBSON-CLAY, DEBORAH CHRISTIAN
and JOHN AND JANE DOES 1-2,**

       **Defendants.**

## COMPLAINT

### PRELIMINARY STATEMENT

O.W. sent her vulnerable, nonverbal six-year-old child into Cabell County's Southside Elementary School believing he would be cared for and educated. Yet after a series of troubling incidents—including a broken finger—she asked to view footage of her son's classroom, only to see him belittled, mocked, shoved, denied food, deprived of water, and ultimately ignored for the majority of the day, never once being changed out of the pull-up his mom put him in before placing him on the bus at 7:30 a.m.

Disturbed by the cruel treatment she witnessed, devastated by the Cabell County Board of Education's callous response, and certain that her child was treated with the same callousness and cruelty throughout his time at Southside Elementary, Plaintiff O.W., individually and as parent, natural guardian, and next friend of G.Y., alleges the following against Defendant Cabell County Board of Education, Ronald Mayes, Amy Gibson-Clay, and John and Jane Does 1–3.

## PARTIES

1.     Plaintiff O.W. is the mother of minor child G.Y. and is a citizen and resident of Cabell County, West Virginia.

2.     G.Y. is a disabled, non-verbal minor under the age of 18 who resides with his parent in Cabell County, West Virginia.

3.     Defendant Cabell County Board of Education (hereinafter referred to as "Defendant CCBOE") is a government agency that governs the public schools in Cabell County, West Virginia.

4.     Defendant CCBOE controls and maintains Southside Elementary School.

5.     At all times relevant herein, Defendant Ronald Mayes was a substitute teacher and employee and/or agent of Defendant CCBOE.

6.     Upon information and belief, Defendant Ronald Mayes is a citizen and resident of Cabell County, West Virginia.

7.     At all times relevant herein, Defendant Amy Gibson-Clay, was a special education aide and employee and/or agent of Defendant CCBOE.

8.     Upon information and belief, Defendant Amy Gibson-Clay is a citizen and resident of Cabell County, West Virginia.

9.     Upon information and belief Defendant Deborah Christian is a substitute teacher of Cabell County Schools.

10.     Upon information and belief Defendant Jane Doe 1 is a special education aide or substitute aide employed by Cabell County Schools.

11.     Upon information and belief Defendant John Doe 2 is a special education aide or substitute aide employed by Cabell County Schools.

## JURISDICTION AND VENUE

12.     Inasmuch as Plaintiff asserts that Defendants have violated federal law, this Court has original jurisdiction pursuant to 28 U.S.C. § 1131.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims, because they are so related to her federal claims that they form part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367.

14.     Venue is appropriate in this Court because Defendant CCBOE is a resident of this district. *See* 28 U.S.C. § 1391(b)(1).

## FACTS

15.     G.Y. is a seven-year-old minor child with Autism.

16.     G.Y. is non-verbal and requires assistance with activities of daily living.

17.     G.Y. is not toilet trained, but rather, at all relevant times, G.Y. was on a toileting schedule whereby he was taken to the toilet three times each day.

18.     G.Y. wears a pull-up that needs to be changed regularly.

19.     G.Y. has a documented history of chronic constipation.

20.     G.Y. requires constant supervision to ensure that he is not participating in unsafe activities.

21.     O.W. enrolled G.Y. at Southside Elementary School for the 2022-2023 school year.

22.     Southside Elementary School has a special needs kindergarten which is classified as a "self-contained classroom."

23.     Despite operating a self-contained kindergarten classroom, Defendant CCBOE did not hire teachers or staff who were trained to work with special needs students.

24.     Defendant CCBOE hired Defendant Ronald Mayes as a long-term substitute teacher for its self-contained kindergarten classroom.

25.     Defendant Ronald Mayes does not have a degree in teaching or in special education.

26.     Defendant Ronald Mayes does not possess a teaching certification in Autism.

27.     Defendant Ronald Mayes has not been trained to work with special needs children.

28.     Upon information and belief, Defendant Ronald Mayes is a former cosmetologist.

29.     Early in the 2022-2023 school year, G.Y. began demonstrating compulsory masturbatory behavior. This behavior increased over his enrollment in Southside Elementary's kindergarten class.

30.     G.Y. does not typically exhibit kicking or fighting behaviors, however, after he started attending Defendant Mayes's kindergarten class, G.Y. began exhibiting extreme frustration and agitation when walking into the school building, including kicking, screaming, stomping his feet, and throwing objects.

31.     G.Y. does not exhibit this behavior at home, while taking the bus, visiting the homes of others, or while in therapy.

32.     Many times, G.Y. was sent home from school for unknown reasons.

33.     Many times, G.Y. was sent home from school smelling of urine.

34.     In approximately October 2022, G.Y. began experiencing night terrors at home. His night terrors were reported to his treating physician.

35.     On October 12, 2022, O.W. received a phone call from Defendant Amy Gibson-Clay stating that G.Y. has "cut his finger" and was "bleeding everywhere."

36.     When O.W. arrived at the school, G.Y. was rushed to her car with a lacerated and broken finger.



37.     O.W. and G.Y. spent approximately 12 hours in the emergency room.

38.     G.Y. was sedated and had to have his finger surgically repaired.

39.     On the day of October 12, 2022, G.Y. had a substitute teacher by the name of Deborah Christian.

40.     Upon information and belief, Ms. Christian does not have a degree in special education.

41.     O.W. has viewed video footage of the moments leading up to and following G.Y.'s injury.

42.     Ms. Christian and the aides in G.Y.'s classroom where not engaging or working with him. He was walking around the room aimlessly.

43.     G.Y. was permitted to slide across the floor, where he apparently jammed his finger into an exposed "crack" between the floor and wall.

44.     When O.W. attempted to investigate what happened to her son, she was informed by Southside Elementary School's Principal, Ms. Carolyn Frye, that it was unlikely O.W. could see the video because there were other children present.

45.     O.W. had to make several inquiries before she was shown an extremely abbreviated clip of the incident.

46.     It was not until O.W. retained counsel that she was permitted to see a slightly longer video, which showed the events leading up to and following the injury.

47.     O.W. was provided only a single close-up picture of unclean, unfinished floor in the self-contained special needs classroom where her son broke his finger:



48.     After his surgery, G.Y. was prescribed antibiotics to prevent an infection.

49.     CCBOE refused to give G.Y. his medication, forcing his mother to come to school each day to administer the antibiotics.

50.     After this incident, O.W. started becoming increasingly concerned about G.Y.'s safety at school.

51.     Near the end of November 2022, G.Y. came home from school with a bruise near his groin area.

52.     On December 13, 2022, G.Y. came home from school with a large scratch near his groin area. This scratch was documented by his mother immediately after he got off the school bus.

53.     Had the Defendants been properly toileting G.Y. or changing his pull-up, they would have seen the scratch. Yet, none of the Defendants reported the injury to O.W.

54.     On December 21, 2022, O.W. received a call from the West Virginia State Police that allegations of abuse had been made against her by G.Y.'s teacher, Defendant Mayes.

55.     Defendant Mayes's report indicated that he had closely examined G.Y.'s genitals and rectum.

56.     As a result of this report, G.Y. was subjected to an intrusive physical examination.

57.     Child protective services investigated Defendant Mayes's report and found no evidence that O.W. had abused or neglected G.Y.

58.     Defendant Mayes knew, or should have known, that his report to the State Police was false.

59.     Upon information and belief, Defendant Mayes's report to the West Virginia State Police was retaliatory in nature, because O.W. had been raising concerns about G.Y.'s treatment and education at school.

60.     After retaining counsel, O.W. was able to view a single day of G.Y. in his classroom.

61.     On the nearly seven and half hours of video, O.W. saw that her child was ignored, shoved, made fun of, denied food, and deprived of water by the Defendants Ron Mayes, Amy Gibson-Clay, Jane Doe 1 and John Doe 2.

62.     Defendants Mayes, Gibson-Clay, and Does 1 and 2  left G.Y. in the pull-up O.W. sent him to school in for the entire day, leaving him unchanged for more than eight hours.

63.     G.Y. was so neglected that he was permitted to spend the vast majority of the day walking around the room and masturbating in the corner, while other children watched.

64.     G.Y. was only given parts of his breakfast and lunch.

65.     Throughout the day, G.Y. continually approached the Individual Defendants who were eating in front of him, but they cruelly pushed him away, barked "no" at him, and made statements that he was not getting their food.

66.     G.Y.'s hunger was so obvious that at one point he pulled an empty food wrapper from the trash can.

67.     Defendant Amy Gibson-Clay took the wrapper from him swiftly and said, "nice try."

68.     For unclear reasons, G.Y. was the only child in the room who was not talked to by CCBOE staff, other than to be scolded.

69.     Defendant Amy Gibson-Clay barked at G.Y., an innocent, non-verbal child.  G.Y. was called "a mean one," was told that his attempts to reach for food were "unacceptable."

70.     Still, G.Y. was forced to be in a classroom where other children were similarly mistreated or neglected, either by being forcefully held in chairs or allowed to scoot on their face across the floor without supervision or redirection.

71.     The Individual Defendants' treatment of G.Y. and his classmates was without pedagogical purpose.

72.     For the majority of the day, the Individual Defendants talked to each other or played on their cellphones. Defendant Mayes spent almost the entire day sitting at his computer.

73.     At times, all of the Individual Defendants left the main classroom, leaving the children unattended for brief periods of time.

74.     Despite statements that additional videos would be made available to O.W., CCBOE staff have not made those videos available.

75.     Upon information and belief, G.Y. was similarly neglected, abused, and discriminated against on other days throughout the fall semester.

76.     The Defendants in this case knew that G.Y. was non-verbal and could not report the mistreatment he and his classmates endured.

77.     CCBOE has been under scrutiny for its treatment of children with disabilities.

78.     Within the last18 months, at least three federal lawsuits have been filed alleging both individual instances of neglect and abuse by teachers and teaching aides in special needs classrooms within the school district, and that CCBOE has a policy or practice of failing to keep children with disabilities safe by failing to adequately train their employees to work with children, like G.Y., who have special needs.

79.      Upon information and belief, after watching videos of the Individual Defendants mistreating G.Y. and his classmates, Defendant CCBOE continued to insist that nothing improper had occurred and allowed the Individual Defendants to continue working with special needs children.

## COUNT I – NEGLIGENCE
**(All Defendants)**

80.     Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

81.     Defendant CCBOE and its employees, agents, and/or representatives, including each of the Individual Defendants, hold an in *loco parentis* relationship with G.Y.

82.     By serving in *loco parentis,* Defendant CCBOE and its employees, agents, and/or representatives hold heightened responsibilities to its students—including students with special needs like G.Y.—including a heightened fiduciary duty.

83.     One of the duties owed to G.Y.—and all other students within the school district— by all Defendants is the duty to protect those entrusted to their care.

84.     Defendants voluntarily accepted the entrusted care of G.Y. As such, Defendants owed G.Y. a special, fiduciary duty of care, in addition to a duty of ordinary care, to ensure the safety of G.Y. and protect him from harm.

85.     The Defendants each breached their duty(ies) of care by, among other things,

    a.  Depriving him of food and drinks

    b.  Allowing G.Y. to sit in his urine for extended periods of time

    c.  Failing to take him to the restroom

    d.  Failing to supervise G.Y.

    e.  Failing to place G.Y. in a safe classroom

86.     Further, the defendants are liable for negligence under the doctrine of negligence per se.

87.     "Violation of a statute is *prima facie* evidence of negligence." Syl. pt. 1, *Anderson v. Moulder*, 394 S.E.2d 61 (W. Va. 1990). This prima facie evidence establishes duty and breach.

88.    CCBOE and the Individual Defendants were negligent per se due to their violation of West Virginia Code § 49–2–803(a), which requires school personnel to report neglect and abuse.

89.    Defendant CCBOE was negligent per se due to its violation of West Virginia Code § 18-5-15c, which requires county boards of education to train its employees in the prevention of child abuse and neglect.

90.    As a direct and proximate result of the Defendants' negligence, G.Y. and his parents suffered damages, including physical and emotional harm.

91.    G.Y. has experienced multiple physical injuries while in the care of the Defendants, one of which was so severe it required G.Y. to be sedated and undergo surgery.

92.    Defendant CCBOE is liable for injury to G.Y. caused by the negligent operation of Southside Elementary School through their employees and agents, as they were acting within the course and scope of their employment.

93.    Defendant CCBOE is liable for injuries to G.Y. caused by the negligent actions—or inactions—of its employees and agents while acting within the course and scope of their employment.

94.    As a direct and proximate result of the actions—or inactions—of CCBOE's employees and agents, G.Y. suffered harm for which CCBOE is vicariously liable.

95.    Defendants' negligence has caused injury to G.Y. and his parent, O.W., including actual and threatened bodily harm to G.Y., along with great mental and emotional distress, embarrassment, and loss of enjoyment of life.

96.     Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

97.     Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees that occurs within or on the grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

98.     Defendant CCBOE does not have immunity from negligence per se claims arising from the violation of an established law or regulation. *See C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 770–72 (W. Va. 2021).

## COUNT II – NEGLIGENT TRAINING AND SUPERVISION
### (Defendant CCBOE)

99.     Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

100.     As an educational institution for minors, where all of the students are entrusted in the care of Defendant CCBOE's agents, employees, and representatives, Defendant CCBOE expressly and implicitly represented that its agents, employees, and representatives, including Defendants Ronald Mayes, Amy Gibson-Clay,  Deborah Christian, and John and Jane Does 1-2, were not a risk to G.Y. and other children with special needs who fell under their supervision or guidance.

101.     Defendant CCBOE had a duty to train its employees and school personnel on how child abuse and child neglect could be prevented. *See* W.Va. Code § 18-5-15c.

102.     Defendant CCBOE had sufficient funding and ability to establish and provide such training.

103.     Defendant CCBOE breached its duty to sufficiently train its employees and school personnel in this regard, particularly relating to the proper care and treatment of special needs students.

104.     Defendant CCBOE had a duty to supervise its staff, including the Individual Defendants.

105.     This duty to supervise included a duty to monitor special needs classrooms and to take other reasonable measures to ensure special needs students were safe while attending Southside Elementary School.

106.     Defendant CCBOE failed to supervise, or at a minimum, failed to reasonably supervise Defendants Ronald Mayes, Amy Gibson-Clay, Deborah Christian, and John and Jane Does 1-2.

107.     Despite knowledge of G.Y.'s needs, Defendant CCBOE failed to take reasonable and appropriate action for G.Y.'s safety.

108.     Defendant CCBOE knew or should have known Defendants Ronald Mayes, Amy Gibson-Clay, Deborah Christian, and John and Jane Does 1-2 were acting negligently toward G.Y., because it had a duty to supervise its staff.

109.     Additionally, Defendant CCBOE had a statutory duty to review the footage of the self-contained classrooms G.Y. was attending.

110.     As a proximate and direct result of Defendant CCBOE's failure to supervise its employees, the Individual Defendants committed negligent acts toward G.Y. and caused G.Y. and his parent, O.W. to suffer damages, including actual and threatened bodily harm to G.Y., along with great mental and emotional distress, and loss of enjoyment of life.

111.     Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

112.     Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

## COUNT III – NEGLIGENT HIRING/RETENTION
### (Defendant CCBOE)

113.     Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

114.     Defendant CCBOE owed G.Y. and his parent, O.W., a duty not to hire or retain employees who are unqualified to care for children with special needs.

115.     Defendant CCBOE knew or reasonably should have known, had it conducted a reasonable investigation into the Individual Defendants' backgrounds prior to their initial employment and/or prior to renewing their contracts with CCBOE, that Individual Defendants were unqualified to care for children with special needs.

116.     Defendant CCBOE knew or reasonably should have known, had it monitored or otherwise investigated the acts, qualifications, experience, training, or knowledge of the Individual Defendants, prior to renewing their contracts or otherwise retaining them, that the Individual Defendants were and are unqualified to care for children with special needs.

117.     As an educational institution and operator of a school, where all of the students are minors entrusted to the school and its employees, Defendant CCBOE expressly and implicitly represented that its teachers, aides, employees, and agents, including the Individual

Defendants, were not a threat to children and others who fell under their control, direction, custody, supervision, and guidance.

118.    Defendant CCBOE could have reasonably foreseen the possible risk of harm or injury to students that could result from hiring individuals unqualified to care for children with special needs, like Individual Defendants.

119.    Defendant CCBOE could have reasonably foreseen the possible risk of harm or injury to students by retaining Individual Defendants after learning of their negligent and neglectful conduct.

120.    Defendant CCBOE breached its duty to the Plaintiff when it hired the Individual Defendants without first conducting a reasonable investigation into their prior education, employment, and criminal histories.

121.    Defendant CCBOE breached its duty by retaining the Individual Defendants, despite knowledge of their negligent and neglectful conduct.

122.    As a direct and proximate result of Defendant CCOBE's negligent hiring and retention, the Individual Defendants committed the aforementioned negligent acts and caused G.Y. and his parent, O.W., to suffer injury, including actual and threatened bodily harm to G.Y., along with great mental and emotional distress, and loss of enjoyment of life.

123.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

124.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the

grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

### COUNT IV- DISABILITY DISCRIMINATION IN VIOLATION OF <u>THE WEST VIRGINIA HUMAN RIGHTS ACT</u>
### (All Defendants)

125.    Plaintiff re-alleges and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

126.    The West Virginia Human Rights Act, West Virginia Code § 5–11–1, *et seq.* prohibits discrimination on the basis of an individual's disability.

127.    Specifically, Under the WVHRA, it is unlawful for "any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to ... [r]efuse, withhold from or deny to any individual because of his or her ... disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges, or services of the place of public accommodations." W. Va. Code § 5-11-9(6)(A).

128.    Public schools are a "place of public accommodation." *See* W. Va. Code § 5-11-3(j).

129.    G.Y. is an individual with a disability under the WVHRA. *See* W. Va. Code § 5-11-3(m).

130.    G.Y.'s disability substantially limits several major life activities. *See id.*

131.    Among other things, G.Y. is non-verbal, is not toilet trained, and requires adult support for all daily living tasks.

132.    The Defendants in this case took advantage of, neglected, and belittled G.Y. because of his disability.

133.    The Defendants knew that, because of his disability, G.Y. could not communicate with his parents about the neglect and mistreatment he suffered.

134.    But for his disability, the Defendants would not have ignored, neglected, or belittled G.Y.

135.    But for his disability, the Defendants would not have left G.Y. in the corner to masturbate throughout the school day.

136.    But for his disability, the Defendants would not have left G.Y. in his unchanged pull-up.

137.    But for his disability, the Defendants would not have deprived G.Y. of food and water.

138.    As a result of the Defendants' actions, G.Y. was denied advantages and privileges of CCBOE's place of public accommodation.

139.    As a result of this discrimination, Plaintiff and G.Y. suffered damages.

140.    Defendant CCBOE tolerated, permitted, and/or ratified the unlawful and discriminatory actions of the Individual Defendants.

141.    The Defendants' actions violated the West Virginia Human Rights Act, entitling the Plaintiff to compensatory damages and attorneys fees and costs pursuant to West Virginia Code § 5-11-13.

142.    Defendant CCBOE and its employees are not immune from suit for claims under the WVHRA. *See Doe v. Cabell Cnty. Bd. of Educ.*, No. CR 3:21-0031, 2022 WL 568342, at *5 (S.D.W. Va. Feb. 24, 2022).

## COUNT V- DISABILITY DISCRIMINATION
## IN VIOLATION OF THE AMERICANS WITH DIABILITES ACT
### (Defendant CCBOE)

143.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

144.    Title II of the Americans with Disabilities Act ("ADA") prohibits public entities, including public schools, from discriminating against students on the basis of their disabilities.

145.    To state a claim under the ADA a plaintiff "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

146.    Defendant CCBOE is a public entity under the ADA. *See* 42 USC § 12131(1).

147.    G.Y. is a "qualified individual with a disability" under the ADA.  *See* 42 USC § 12131(2).

148.    G.Y.'s disability substantially limits several major life activities.

149.    As a minor child living in Cabell County, G.Y. is otherwise qualified to receive the benefits of Defendant CCBOE's services, programs, and activities.

150.    G.Y. was discriminated against because of his disability.

151.    The Defendants knew, because of his disability, G.Y. could not communicate with his parent about the neglect and mistreatment he suffered.

152.    But for his disability, the Defendants would not have ignored, neglected, or belittled G.Y.

153. But for his disability, the Defendants would not have left G.Y. in the corner to masturbate throughout the school day.

154. But for his disability, the Defendants would not have left G.Y. in his unchanged pull-up.

155. But for his disability, the Defendants would not have deprived G.Y. of food and water.

156. As a result of the Defendants' actions, G.Y. was denied advantages and privileges of CCBOE's place of public accommodation.

157. As a result of this discrimination, Plaintiff and G.Y. suffered damages.

## COUNT VI - VIOLATION OF THE REHABILITATION ACT
### (Defendant CCBOE)

158. Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

159. Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with disabilities.

160. Defendant CCBOE is a recipient of federal financial assistance, and therefore is subject to the provisions of Section 504.

161. G.Y. is an "otherwise qualified individual with a disability" within the meaning of Section 504. 29 U.S.C. §§ 794, 705(20).

162. G.Y.'s disability substantially limits one or more major life activities.

163. As a minor child living in Cabell County, G.Y. is qualified to participate in CCBOE's educational programs, activities, and services.

164. G.Y. was discriminated against because of his disability.

165. But for his disability, the Defendants would not have neglected or belittled G.Y.

166.    But for his disability, the Defendants would not have left G.Y. in the corner to masturbate throughout the school day.

167.    But for his disability, the Defendants would not have left G.Y. in his unchanged pull-up.

168.    But for his disability, the Defendants would not have deprived G.Y. of food and water.

169.    As a result of the Defendant's actions, G.Y. was denied advantages and privileges of CCBOE's place of public accommodation.

170.    As a result of this discrimination, Plaintiff and G.Y.  suffered damages.

## COUNT VII- CIVIL BATTERY
### (Individual Defendants)

171.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

172.    The Individual Defendants intentionally touched G.Y. in a harmful or offensive manner, without his consent or the consent of his parent.

173.    Specifically, the Individual Defendants pushed and/or grabbed G.Y. in a harmful or offensive manner.

174.    G.Y. suffered damages as a direct and proximate result of the Individual Defendants' civil battery.

175.    The Individual Defendants acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

### COUNT VIII – CIVIL ASSAULT
**(Individual Defendants)**

176.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

177.    The Individual Defendants intentionally attempted or threatened to inflict injury on G.Y. when they attempted to physically push and/or grab him.

178.    The Individual Defendants had an apparent ability to cause the harm.

179.    The Individual Defendants' misconduct caused and created a reasonable apprehension of bodily harm or offensive contact in G.Y.

180.    G.Y. suffered damages as a direct and proximate result of the Individual Defendants' civil assault.

181.    The Individual Defendants acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

### COUNT IX – TORT OF OUTRAGE
**(Individual Defendants)**

182.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

183.    The Individual Defendants' intentional actions, as alleged herein, were of such an atrocious, extreme, and outrageous nature as to exceed all bounds of decency and to shock the conscience.

184.    The Individual Defendants acted with the intent to inflict emotional distress or acted recklessly when it was substantially certain emotional distress would result from their conduct.

185.    As a direct and proximate result of the Individual Defendants' actions O.W. and G.Y. have suffered emotional distress.

186.    The emotional distress suffered by O.W. and G.Y. is so severe that no reasonable person would or could be expected to endure it.

## COUNT X – LOSS OF FILIAL CONSORTIUM
### (All Defendants)

187.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

188.    O.W. has suffered the loss of filial consortium, services, and society of her son, G.Y., as a direct and proximate result of the acts and omissions of the Defendants as set forth herein.

189.    These Defendants' acts and omissions have also proximately caused Plaintiff O.W. to suffer extreme emotional distress.

190.    The Defendants' conduct has caused a devastating disruption of the overall function of G.Y. and O.W.'s home.

191.    These damages are ongoing and are expected to continue into the future.

## VIOLATION OF 42 U.S.C. § 1983
### (Defendant CCBOE)

192.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

193.    The actions of Defendant CCBOE violated G.Y.'s constitutional rights, as guaranteed under the Fourteenth Amendment of the United States Constitution.

194.    Defendant CCBOE follows and at all relevant times maintained a custom, policy, and/or practice that caused injury to G.Y. and O.W. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976).

195.    The failure of Defendant CCBOE's administrators to adequately hire, retain, train and/or supervise teachers, employees, and aides caring for special needs students represents a custom of deliberate indifference.

196.    There have been multiple instances in recent years whereby Defendant CCBOE's personnel have behaved inappropriately and whereby CCBOE has allowed its employees to put students with special needs at risk.

197.    It is not just G.Y. that is being mistreated by Defendant CCBOE—other special needs students attending Cabell County Schools, including Southside Elementary School, are being mistreated because of their disabilities.

198.    Other lawsuits have been filed alleging that Defendant CCBOE has failed to keep its special needs students safe, and that those working with special needs children lacked the requisite training. *See e.g. Doe v. Cabell Cnty. Bd. of Educ.*, No. 3:21-cv-31 (S.D.W. Va.); *Mills v. Cabell Cnty. Bd. of Educ.*, No. 3:22-cv-592 (S.D.W. Va.); *C.G. v. Cabell Cnty. Bd. of Educ.*, No. 3:23-cv-373 (S.D.W. Va.); *John Doe v. CCBOE, WVDHHR, et al*, No. 23-C-576 (Kanawha Co).

199.    Defendant CCBOE's personnel witnessed the mistreatment of G.Y. and his classmates and allowed it to continue for days or weeks.

200.    Defendant CCBOE's administrators witnessed the mistreatment of G.Y. and his classmates and allowed his maltreaters to continue working with him and other special needs students.

201.    Defendant CCBOE regularly hired and retained individuals to serve as teachers and teaching aides to children with special needs who lacked the requisite training or certification.

202.    As a direct result of the Defendant CCBOE's misconduct and clearly-established constitutional violations, G.Y. and O.W. suffered damages.

****

WHEREFORE, O.W., individually and as the parent and guardian of G.Y., a minor child, demands judgment against the Defendants Cabell County Board of Education, Ronald Mayes, Amy Gibson-Clay, Deborah Christian, and John and Jane Does 1–2 in an amount to fully and fairly compensate O.W. and G.Y. for damages, including, but not limited to, court costs, attorney fees, economic damages, non-economic damages, pre- and post-judgment interest as provided by law, and any other relief that this Court deems just under the circumstances.

Plaintiff further demands punitive damages, as Defendants Cabell County Board of Education, Ronald Mayes, Amy Gibson-Clay, Deborah Christian, and John and Jane Does 1–2 acted with actual malice toward G.Y., or with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of G.Y.

**Plaintiff demands a trial by jury.**

**O.W., individually and as the parent and guardian of G.Y., a minor child,**

**By Counsel**,

/s/*Kayla S. Reynolds*
Ryan McCune Donovan (WVSB #11660)
Kayla S. Reynolds (WVSB #13268)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983

Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
rdonovan@hfdrlaw.com
kreynolds@hfdrlaw.com