IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

O. W. individually and as the parent and
guardian of G. Y., a minor child,

              Plaintiff,

v.                                        CIVIL ACTION NO. 3:24-0070

CABELL COUNTY BOARD OF EDUCATION,
RONALD MAYES,
AMY GIBSON-CLAY,
DEBORAH CHRISTIAN and,
JOHN AND JANE DOES 1-2,

              Defendants.

**MEMORANDUM OPINION & ORDER**

Pending are Defendant Deborah Christian's Motion to Dismiss ("Christian Mot."), *see* ECF No. 8, and Defendants Cabell County Board of Education, Ronald Mayes, Amy Gibson-Clay, and John and Jane Does 1–2's Partial Motion to Dismiss ("County Mot."), *see* ECF No. 10. Upon review, the Court **GRANTS IN PART**, **DENIES IN PART** the Motions.[1]

**BACKGROUND**

G.Y. is a seven-year-old, non-verbal child with autism. *See* Compl. ¶¶ 15, 16, ECF No. 1. He requires assistance with daily tasks. *See id.* ¶ 16. For example, G.Y. is not toilet trained, *see id.*

---

[1] The Court also considered Defendant Deborah Christian's Memorandum of Law in Support of Her Motion to Dismiss ("Christian Mem."), ECF No. 9; Plaintiff's Response in Opposition to Defendant Deborah Christian's Motion to Dismiss ("Pl.'s Christian Resp."), ECF No. 18; Defendant Deborah Christian's Reply in Support of Her Motion to Dismiss ("Christian Reply"), ECF No. 21; Defendant Cabell County Board of Education, Ronald Mayes, Amy Gibson-Clay and John & Jane Does 1–2's Memorandum of Law in Support of Their Partial Motion to Dismiss ("County Mem."), ECF No. 11; Plaintiff's Response in Opposition to Defendants Cabell County Board of Education, Ronald Mayes, Amy Gibson-Clay, and John & Jane Does 1–2's Motion for Partial Dismissal ("Pl.'s County Resp."), ECF No. 17; Defendant's Cabell County Board of Education, Ronald Mayes, Amy Gibson-Clay, and John & Jane Does 1–2 Reply in Support of Their Partial Motion to Dismiss ("Pl.'s County Reply"), ECF No. 22.

¶ 17, and wears a pull-up that needs to be changed regularly. *See id.* ¶ 18. Because of his condition, G.Y. requires "constant supervision." *Id.* ¶ 20.

During the 2022–2023 academic year, O.W. enrolled G.Y. at Southside Elementary School—a public school supervised by the Cabell County Board of Education. *See id.* ¶¶ 4, 21.

CCBOE did not hire teachers or staff trained to work with students with special needs to oversee G.Y.'s classroom. *See id.* ¶ 23. Instead, it hired Ronald Mayes as a long-term substitute. *See id.* ¶ 24. Mayes has no teaching or special education degree, *see id.* ¶ 25, no autism certifications, *see id.* ¶ 26, and no training regarding students with special needs, *see id.* ¶ 27.

On October 12, 2022, Mayes was absent. *See id.* ¶ 39. Deborah Christian served as a substitute teacher. *See id.* Like Mayes, Christian has no degree in special education. *See id.* ¶ 40. Throughout the day, Christian and Amy Gibson-Clay—a special education aide—let G.Y. walk around the room aimlessly and slide across an "unclean" and "unfinished" floor. *Id.* ¶¶ 42–43, 46. While sliding, G.Y. jammed his finger into a crack between the floor and wall. *See id.* ¶ 43. He bled. *See id.* ¶ 35. Alarmed, Gibson-Clay called O.W. *See id.* ¶ 35. She explained G.Y. "cut his finger" and "ble[d] everywhere." *Id.* O.W. rushed to the school. *See id.* ¶ 36. She took G.Y. to the hospital. *See id.* There, doctors repaired G.Y.'s finger. *See id.* ¶ 39. They also gave him antibiotics to prevent an infection. *See id.* ¶ 48. CCBOE refused to administer these antibiotics to G.Y. *See id.* ¶ 49. So O.W. visited G.Y. every day to administer the medication. *See id.* ¶ 49.

O.W. became "increasingly concerned" for G.Y.'s safety at school. *Id.* ¶ 50. In November 2022, G.Y. came home from school with a bruise near his groin area. *See id.* ¶ 51. On December 13, 2022, G.Y. came home with another large scratch near his groin area. *See id.* ¶ 52. A few days later, the West Virginia State Police called O.W. *See id.* ¶ 54. Officers informed her that Mayes lobbed allegations of abuse at her after he examined G.Y.'s genitals and rectum. *Id.* ¶ 55. Because

of the allegations, Child Protective Services conducted an "intrusive physical examination" of G.Y. *Id.* ¶ 57. Eventually, CPS found O.W. did not abuse or neglect G.Y. *See id.*

After the investigation, O.W. retained counsel. *See id.* ¶ 60. At some point, O.W. obtained seven and half hours of video footage of G.Y. in his classroom. *See id.* In the video, Mayes, Gibson-Clay, Jane Doe, and John Doe spend most of the day talking to one another and playing on their cellphones. *See id.* ¶ 72. Mayes sits at his computer. *See id.* At some point, they all leave the classroom together—leaving G.Y. unattended. *See id.* ¶ 73. Meanwhile, G.Y. remained in his pull-up for the entire day. *See id.* ¶ 62. He "walk[ed] around the room and masturbate[ed] in the corner" while other children watched. *Id.* ¶ 63. When G.Y. approached Mayes, Gibson-Clay, Jane Doe, and John Doe eating in front of him, each "pushed him away, barked 'no' at him, and [told him] he was not getting their food." *Id.* ¶ 65. At one point, G.Y. pulled a food wrapper from the trash can. *See id.* ¶ 66. Gibson-Clay took the wrapper and said, "[N]ice try." *Id.* ¶ 67. She also called G.Y. a "mean one" and called his attempts to reach for food "unacceptable." *Id.* ¶ 69. O.W. requested more video footage. *See id.* ¶ 74. CCBOE refused to share any more footage. *See id.*

O.W. alleges CCBOE, Mayes, Gibson-Clay, Christian, John Doe, and Jane Doe "similarly neglected, abused, and discriminated against" G.Y. "throughout the fall semester." *Id.* ¶ 75.

O.W. sued. She asserts eleven causes of action: Count I – Negligence; Count II – Negligent Training/Supervision; Count III – Negligent Hiring/Retention; Count IV – Disability Discrimination under the West Virginia Human Rights Act; Count V – Disability Discrimination under the Americans With Disabilities Act; Count VI – Violation of the Rehabilitation Act; Count VII – Civil Battery; Count VIII – Civil Assault; Count IX – Tort of Outrage; Count X – Loss of Filial Consortium; and Count XI – 42 U.S.C. § 1983. *See id.* ¶¶ 80–202.

## STANDARD OF REVIEW

A motion to dismiss tests the formal sufficiency of a plaintiff's complaint. *See Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While facts alleged in the complaint need not be probable, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if its factual content allows the court to draw the "reasonable inference" the defendant is "liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In its review, the Court accepts all factual allegations in the complaint as true, *see id.*, and draws "all reasonable inferences in favor of the plaintiff," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." *Id.* (citation omitted). Still—a complaint may proceed even if "a savvy judge" finds actual proof of its alleged facts "improbable" and recovery "very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ANALYSIS

O.W. asserts eleven claims. *See* Compl. ¶¶ 80–202. Defendants move to dismiss seven counts: Count I (negligence), Count IV (WVHRA), Count VII (civil battery), Count VIII (civil assault), Count IX (tort of outrage), Count X (loss of filial consortium), and Count XI (§ 1983). *See* Christian Mot. at 1; Christian Mem. at 2–3; County Mot. at 2; County Mem. at 3.

The Court considers each count in turn.

**I**

In Count I, O.W. asserts two negligence claims against all Defendants. *See* Compl. ¶¶ 80–98. *First*, O.W. alleges a garden variety negligence claim. *See id.* ¶¶ 80–85 (duty, breach), 90–98 (causation, damages). *Second*, O.W. alleges Defendants "are liable for negligence under the doctrine of negligence per se." *Id.* ¶ 86. Specifically, O.W. alleges Defendants "were negligent per se due to their violation" of W. Va. Code §§ 49-2-803(a) and 18-5-15c. *Id.* ¶¶ 88–89.

Defendant Christian attacks the garden variety negligence claim. *See* Christian Mem. at 7–8. All Defendants then attack the negligence *per se* claim. *See id.* at 8–10; County Mem. at 6–8.

**A**

The Court begins with O.W.'s general negligence claim. To prevail at this stage, O.W. must plead duty, breach, causation, and damages. *See, e.g.*, *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022).

O.W. satisfies this burden. *First*, she alleges Defendants—including Christian—owe G.Y. an ordinary duty of care and a heightened fiduciary duty of care. *See* Compl. ¶¶ 81–84. These duties stem from Defendants' roles as teachers and caretakers of G.Y. while he is at Southside Elementary School. *See id.* ¶¶ 21, 23, 81–82 (discussing *loco parentis* relationship between G.Y. and Defendants). *Second*, O.W. alleges Defendants breached their duties of care to G.Y. by depriving him of food and drink, allowing him to sit in his urine for extended periods of time, failing to take him to the restroom, failing to supervise him, and failing to place him in a safe classroom. *See id.* ¶ 85. This list is not exhaustive. *See id. Finally*, O.W. alleges she suffered physical and emotional harm because of Defendants' negligence. *See id.* ¶¶ 90, 91.

Defendant Christian sees things differently. She makes two arguments for dismissal. Neither prevails. *First*, Christian argues O.W. fails to allege Christian owed G.Y. any duties. *See*

Christian Mem. at 7. Not so. O.W. alleges "all Defendants" owe G.Y. "the duty to protect those entrusted to their care." Compl. ¶ 83. This duty includes Christian—the school official tasked with supervising G.Y. on October 12, 2022. *See id.* ¶ 39.

*Second*, Christian argues O.W. fails to allege Christian breached her duty of care. *See* Christian Mem. at 7–8. Again, not so. O.W. alleges Christian did not "engag[e] or work[]" with G.Y. despite his need for "constant supervision." Compl. ¶¶ 20, 42. Instead, Christian let G.Y. "walk[] around the room aimlessly" and "slide across" an "unclean" and "unfinished" floor. *Id.* ¶¶ 42, 43, 47. When G.Y. jammed his finger, Christian failed to inform O.W. *See id.* ¶ 35 (alleging Gibson-Clay called O.W.). Collectively, these allegations suggest Christian failed to supervise G.Y. and protect him from harm—duties encompassed by a substitute teacher's duty of care. *See, e.g.*, *Moore v. Wood Cnty. Bd. of Educ.*, 489 S.E. 2d 1, 6 (W. Va. 1997) ("[V]irtually all courts that have considered the issue have concluded that school personnel have a duty to exercise supervision over pupils during school hours on school grounds").

Accordingly, the Court **DENIES** Defendant Christian's Motion to Dismiss Count I's general negligence claim.[2]

### B

The Court turns to O.W.'s negligence *per se* claim. Defendants stress West Virginia law does not recognize a stand-alone cause of action for negligence *per se*. *See* County Mem. at 6–7; Christian Mem. at 8–9. The Court agrees.

In *Mills v. Cabell County Board of Education*, this Court stressed West Virginia law "does not provide a cause of action for negligence *per se*." 2023 WL 498053, at *3 (S.D. W. Va. Aug.

---

[2] Christian is not immune from this claim. *See* Christian Mem. at 6. Accepting O.W.'s allegations as true, she plausibly alleges Christian acted—at least at times—both "manifestly outside the scope" of her employment responsibilities and in a "wanton or reckless manner." W.Va. Code §§ 29-12A-5(b)(1), (2).

3, 2023) (reviewing the "weight of authority"). Instead, "the violation of a statute is *prima facie* negligence and not negligence *per se*." *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991) (quotation omitted). *See also State ex rel. W. Va.-Am. Water Co. v. Webster*, 888 S.E.2d 448, 458 n.9 (W. Va. 2023) (reaffirming this principle).

Here, O.W. alleges Defendants are "liable for . . . negligence *per se*." Compl. ¶¶ 86. She then clarifies Defendants "were negligent *per se* due to their violation of West Virginia Code § 49-2-803(a)," *id.* ¶ 88, and "were negligent *per se* due to their violation of West Virginia Code § 18-5-15c," *id.* ¶ 89. By their own terms, these allegations assert a negligence *per se* claim—something West Virginia law does not allow. Still, O.W. stresses she intends to use Defendants' alleged statutory violations to show *prima facie* evidence of negligence—not to prove negligence *per se*. *See* Compl. ¶ 87; Pl.'s Christian Resp. at 8; Pl.'s County Resp. at 10.

Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss Count I to the extent it pleads a negligence *per se* claim. However, Count I is really two counts—garden variety negligence and negligence *per se*. O.W. remains free to argue Defendants' violations of W. Va. Code §§ 49-2-803(a) and 18-5-15c provide *prima facie* evidence of negligence. *See Mills*, 2023 WL 4980553 (adopting similar approach). *Cf. Shaffer v. Nat'l Health Ins. Co.*, 2018 WL 1995525, at *2–*5 (N.D. W. Va. Apr. 27, 2018) (allowing a statutory bad faith claim to proceed while dismissing common law bad faith claim even though the plaintiff pled both "as one claim").

## II

In Count IV, O.W. asserts a claim under the West Virginia Human Rights Act against all Defendants. *See* Compl. ¶¶ 125–42. The WVHRA makes it unlawful for "any person being the owner, lessee, proprietor, manager, superintendent, agent[,] or employee of any place of public accommodations to . . . [r]efuse, withhold from[,] or deny to any individual because of his or her .

. . disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges, or services of the place of public accommodations." W. Va. Code § 16B-17-9(6)(A).

Defendants make three arguments for dismissal. None succeed. *First*, Defendants argue O.W. does not allege G.Y. has a disability under the WVHRA. *See* Christian Mem. at 10; County Mem. at 8. The Court disagrees. The term "disability" includes any "mental or physical impairment which substantially limits one or more of such person's major life activities." W. Va. Code § 16B-17-3(m)(1). "Major life activities," includes "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning[,] and working." *Id.* G.Y. satisfies this definition. G.Y. is autistic. *See* Compl. ¶ 15. He is nonverbal and incontinent. *See id.* ¶¶ 16–19, 76. He requires a "pull-up that needs to be changed regularly." *Id.* ¶ 18. He requires "constant supervision," *id.* ¶ 20, and "assistance with activities of daily living," *id.* ¶ 16. *See also id.* ¶ 131. These allegations are sufficient to plead a disability under the WVHRA. *See* W. Va. Code § 16B-17-3(m)(1) (listing "speaking," "caring for one's self," and "performing manual tasks" as "major life activities" possibly disrupted by a mental or physical impairment).

*Next*, Defendants argue O.W. fails to allege Defendants mistreated G.Y. because of his disability. *See* County Mem. at 9; Christian Mem. at 11. Again, the Court disagrees. O.W. alleges G.Y. attended a special education classroom. *See* Compl. ¶¶ 22–23. There, Defendants—including Christian—refused to engage or work with G.Y. *See id.* ¶¶ 42, 72–73. They ignored, shoved, and ridiculed G.Y. *See id.* ¶¶ 61, 134. They left G.Y. in an unchanged pull-up. *See id.* ¶¶ 62, 136. They left G.Y. to masturbate in front of his peers. *See id.* ¶¶ 63, 135. At one point, Mayes "closely examined" G.Y.'s genitals and rectum. *Id.* ¶ 55. This behavior—by all Defendants—occurred "throughout the fall semester," *id.* ¶ 75, at least in part, because Defendants knew "G.Y. was non-verbal and could not report the mistreatment he and his classmates endured," *id.* ¶ 76. At this stage,

these allegations raise a plausible inference Defendants mistreated O.W. because of his disability. *See Mills*, 2023 WL 4980553 at *6 (rejecting similar argument).

*Finally*, Defendants argue O.W. does not allege Defendants deprived G.Y. of any educational benefits. *See* County Mem. at 9; Christian Mem. at 11. Defendants forget the "factual heft" of the complaint. *Mills*, 2023 WL 4980553 at *6. The thrust of the complaint is simple: Defendants' actions (or lack thereof) prevented G.Y. from receiving an adequate education—the *raison d'être* of a public school. *See, e.g.*, Compl. at 1 (explaining O.W. "sent her vulnerable, nonverbal six-year-old child into Cabell County's Southside Elementary School believing he would be cared for and educated"); *id.* ¶ 22 (explaining G.Y. attended a special education classroom to receive individualized attention).

Accordingly, the Court **DENIES** Defendants' Motions to Dismiss Count IV.[3]

### III

In Count VII, O.W. asserts a civil battery claim. *See id.* ¶¶ 171–75. In Count VIII, she asserts a civil assault claim. *See id.* ¶¶ 176–81. She asserts both against the Individual Defendants.

In West Virginia, assault and battery are separate torts. *See Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D. W. Va. 2015). A defendant is liable for assault if it "(a) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004) (quotation omitted). A

---

[3] Neither Christian nor CCBOE are immune from this claim. *See* Christian Mem. at 5–6; County Mem. at 5–6. The WVHRA applies to all persons—including political subdivisions and their employes. *See* W. Va. Code § 5-11-9 (defining person to include any individual); *P.A. v. Fayette Cnty. Bd. of Educ.*, 2020 WL 4740481, at *9 (S.D. W. Va. Aug. 14, 2020) (explaining the WVHRA "expressly imposes liability" on county boards of education). Because the WVHRA is a provision of the West Virginia Code, the West Virginia Governmental Torts Claims & Insurance Reform Act ("GTCA") does not bar suit. *See* W. Va. Code § 29-12A-5(b)(3) (stating employees are not immune from liability where liability is "expressly imposed upon the employee by a provision of" the West Virginia Code); W. Va. Code § 29-12A-4(c)(5) (similar for political subdivisions).

defendant is liable for battery if it (a) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* Said more succinctly: an assault is "the threat to do violence;" "the actual doing of violence" is battery. *State v. Cunningham*, 236 S.E.2d 459, 593 (1977) (Miller, J., dissenting).

Christian cries foul. She argues O.W. does not specify what conduct by Christian constitutes battery or assault. *See id.* The Court disagrees. Admittedly, O.W.'s allegations supporting an assault or battery claim against Christian are sparse. O.W. alleges Christian served as a substitute teacher on October 12, 2022. *See* Compl. ¶ 39. On that day, Christian did not "engag[e] or work[]" with G.Y. *Id.* ¶ 42. Instead, she let G.Y. walk around the classroom and slide across the floor unsupervised. *See id.* ¶ 43. Nothing suggests Christian threatened violence or committed violence against G.Y.—at least in the "few minutes" of video footage from October 12, 2022. Pl.'s Christan Resp. at 10.

Yet—O.W. continues. She alleges full-day video footage from another day shows different Defendants shoved G.Y., tore things from his hands, and forcefully held other children in chairs. *See* Compl. ¶¶ 61–61, 65, 67, 70. Although these allegations are tied to Mayes, Gibson-Clay, Jane Doe, and John Doe, *see id.* ¶ 61, O.W. alleges "upon information and belief" that "G.Y. was similarly neglected, abused, and discriminated against on other days throughout the fall semester," *id.* ¶ 75. This includes October 12, 2022. The crucible of discovery will test these claims. For now, however, the Court finds O.W. raises a plausible inference—albeit by a thin margin—that Christian at least shoved G.Y. on October 12, 2022. This is enough at this stage.

Accordingly, the Court **DENIES** Defendant Christian's Motion to Dismiss Counts VII and VIII.[4]

V

In Count IX, O.W. asserts a tort of outrage claim against the Individual Defendants. *See* Compl. ¶¶ 183–86. To prevail at this stage, she must allege (1) the defendant's conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;" (2) the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain harm would result from its conduct; (3) the defendant's actions caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that "no reasonable person could be expected to endure it." *Travis v. Alcon, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).

O.W. satisfies this burden. She alleges Defendants' actions throughout the semester were so "atrocious, extreme, and outrageous as to exceed all bounds of decency and to shock the conscience." *Id.* ¶ 183. Specifically, she alleges Defendants let G.Y. slide across an unfinished floor unsupervised, *see id.* ¶ 43, masturbate in front of other students, *see id.* ¶¶ 29, 63, and sit in his own urine for hours, *see id.* ¶ 62. At times, Defendants left G.Y. entirely unattended. *See id.* ¶ 73. They left G.Y. to witness his peers be "forcefully held in chairs" and "scoot on their face across the floor without supervision or redirection." *Id.* ¶ 70.

To be sure, "[m]aintaining order in the classroom can be a difficult task." *New Jersey v. T.L.O.*, 469 U.S. 325, 352 (Blackmun, J., concurring in judgment). Children of all sorts are

---

[4] Christian is not immune from this claim. Civil assault and battery are intentional torts. As such, the GTCA does not bar suit. *See, e.g.*, *Summers v. W. Va. Dep't of Homeland Sec.*, 2022 WL 16554700, at *3 (S.D. W. Va. Oct. 31, 2022) (explaining the GTCA does not "create liability for intentional or willful acts of the political subdivision's employees"). Moreover, shoving a student with special needs is plausibly "manifestly outside the scope" of her employment responsibilities. W.Va. Code § 29-12A-5(b)(1).

"inclined to test the outer boundaries of acceptable conduct and to imitate the misbehavior of a peer." *Id.* Still—a "teacher's focus is, and should be, on teaching and helping students." *Id.* Taking O.W.'s allegations as true, Defendants' actions fail to maintain an "environment conducive to learning"—the very purpose of a public classroom. *Id.* at 353. Indeed, these allegations suggest Defendants shifted between paying no attention whatsoever to G.Y. and consciously starving and punishing one of their most needy students. All told, the Court has little trouble finding O.W. alleges a plausible tort of outrage claim.

Defendants disagree. *First*, Defendants argue Count IX is duplicative of Counts VII and VIII. *See* Christian Mem. at 13; County Mem. at 9. Because O.W.'s claims for battery, assault, and outrage "arise from the same event," O.W. cannot pursue all three claims simultaneously. *See* Christian Mem. at 13; County Mem. at 9. Defendants misunderstand the law. West Virginia law "treats claims for outrage and assault and battery arising from the same event as duplicative" because all three causes of action "allow a plaintiff to recover emotional distress damages." *Mills*, 2023 WL 4980553 at *8. But when a tort of outrage claim "arises out of separate events from the plaintiff's assault and battery claims, a plaintiff may proceed with both claims." *Northcraft v. W. Va. Div. of Corr. & Rehab*, 2020 WL 6384419, at *4 (S.D. W. Va. Oct. 30, 2020).

Here, O.W. alleges conduct "beyond the alleged assault and battery" that supports her tort of outrage claim. *Mills*, 2023 WL 4980553 at *9; Compl. ¶ 182 (incorporating all prior allegations into her tort of outrage claim). She alleges Defendants let G.Y. slide across an unfinished floor unsupervised, *see id.* ¶ 43, masturbate in front of other students, *see id.* ¶¶ 29, 63, and sit in his own urine for hours, *see id.* ¶ 62. They left G.Y. entirely unattended for extended periods of time. *See id.* ¶ 73. None of these actions support an assault or battery claim. But they do undermine a parent's trust in the public education system and support a tort of outrage claim.

*Second*, Christian argues O.W. fails to show what actions of Christian were outrageous. *See* Christian Mem. at 13–14. They stress allowing a child to slide across a floor unsupervised is not outrageous. *See id.* at 13. Fair enough. But Defendants forget the rest of the complaint. Later in her complaint, O.W. alleges "upon information and belief" Defendants—including Christian—allowed G.Y. to slide across the floor, masturbate in front of other students, and sit in his urine "throughout the fall semester." Compl. ¶ 75. She also alleges Defendants deprived G.Y. of food and drink. *See id.* ¶¶ 61, 64–66. Accepting these allegations as true, O.W. sufficiently alleges outrageous behavior against Christian. *See Mills*, 2023 WL 4980553 at *9 (explaining forcing a special needs child to sit in his feces, mocked, taunted, and deprived of food and drink without a means of communications is "utterly intolerable in a civilized society").

Accordingly, the Court **DENIES** Defendants' Motions to Dismiss Count IX.[5]

## VI

In Count X, O.W. asserts a loss of filial consortium claim against all Defendants. *See* Compl. ¶¶ 187–91. Defendants argue West Virginia law does not recognize this claim. *See* Christian Mem. at 14–15; County Mem. at 11–12. This argument is premature.

In *Losh v. Teton Transportation, Inc.*, this Court explained West Virginia courts have yet to address the specifics of a loss of filial consortium claim. *See* 2010 WL 534216, at *1 (S.D. W. Va. Dec. 21, 2010). As such, this Court allowed the claim to survive a motion to dismiss to provide the parties time to develop adequate briefing on the issue. *See id.* at *3 (encouraging parties to survey jurisdictions). *See also Bentler v. Estate of Haner*, 2012 WL 6703127, at *2–*3 (S.D. W.

---

[5] None of the Individual Defendants are immune from suit. The tort of outrage is an intentional tort. As a result, the GTCA does not bar suit. *See Summers* 2022 WL 16554700 at *3. Moreover, repeatedly neglecting students with special needs is at least plausibly not part of the individual defendants' employment responsibilities. *See* W.Va. Code § 29-12A-5(b)(1), (2); *State v. Riddle*, 285 S.E.2d 359, 364 (1981) (emphasizing schools are responsible for providing classroom instruction *and* for ministering to the health needs of children).

Va. Dec. 26, 2012) (adopting similar approach). *Accord* W. Va. Code § 51-1A-2 (authorizing district courts to certify certain questions of law to the West Virginia Supreme Court of Appeals).

The Court sees no reason to change course here. Accordingly, the Court **DENIES** Defendants' Motions to Dismiss Count X.[6]

## VII

In Count XI, O.W. asserts a *Monell* claim against CCBOE. *See* Compl. ¶¶ 192–202. CCBOE argues Plaintiffs "set forth nothing more than a 'formulaic recitation of the elements.'" County Mem. at 10 (quoting *Twombly*, 550 U.S. at 555). The Court disagrees.

A plaintiff may hold a political subdivision liable for constitutional violations under § 1983. *See Hall v. Putnam Cnty. Comm'n*, 637 F. Supp. 3d 381, 398 (S.D. W. Va. 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). To assert a *Monell* claim, the plaintiff must allege the defendant maintained "an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). This is an easy burden. *See Owens v. Baltimore Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014) (explaining "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high").

O.W. adequately alleges a *Monell* claim. *First*, she alleges G.Y.—and other students— were discriminated against because of their disability. *See supra* Part II (detailing allegations of discrimination); Compl. ¶¶ 70, 197, 199–200. *Second*, she alleges CCBOE failed to adequately hire, retain, train, and supervise teachers, employees, and aides caring for students with special

---

[6] The Court reserves judgment as to whether the GTCA grants immunity to Defendants and/or limits punitive damage requests asserted against them. At first glance, some jurisdictions allow a loss of filial consortium claims to be based on negligent *or* intentional behavior. *See Beebe v. N. Idaho Day Surgery, LLC*, 526 P.3d 650, 662 (Idaho 2023). O.W. should clarify her claim throughout discovery so the parties may brief these issues further at summary judgment.

needs. *See id.* ¶¶ 23, 25–27, 40, 195, 201. *Finally*, she stresses CCBOE's personnel "behaved inappropriately" towards students with special needs in "multiple instances in recent years." *Id.* ¶¶ 77–78, 196, 198. Indeed, in the eighteen months prior to the filing of her complaint, O.W. alleges parents filed "at least three federal lawsuits . . . alleging both individual instances of neglect and abuse by teachers and teaching in special needs classrooms within the school district." *Id.* ¶ 78. Nevertheless, CCBOE refused to change. *See id.* ¶ 195 (suggesting deliberate indifference).

Collectively, these allegations state a § 1983 *Monell* claim premised on disability discrimination. *See Mills*, 2023 WL 4980553 at *11 (finding similar allegations of chronic mistreatment of students with special needs and mismanagement of self-contained classrooms sufficiently plead a *Monell* claim predicated on the Equal Protection Clause); *Durstein v. Alexander*, 2019 WL 6833858, at *7 (S.D. W. Va. Dec. 13, 2019) (Chambers, J.) (recognizing "final policy making authority for a school district resides with the five members of its county board of education" under West Virginia law). *Cf. Quigley v. City of Huntington*, 2017 WL 9533233, at *9 (S.D. W. Va. Sept. 22, 2017) (allowing *Monell* claim to proceed where "[p]laintiff's identification of a municipal custom and citation to seven prior civil rights lawsuits filed against the Huntington Police Department suggested the City's knowledge and difference").

Accordingly, the Court **DENIES** CCBOE's Motion to Dismiss Count XI.[7]

## VIII

Defendants raise two ancillary issues. The Court considers each in turn.

---

[7] CCBOE is not immune from this claim. *See* W. Va. Code § 29-12A-18(e) (explaining immunity does not apply to "[c]ivil claims based upon alleged violations of the Constitution or statutes of the United States").

**A**

The Individual Defendants request any claims asserted against them in their "official capacities" be dismissed with prejudice as "improperly duplicative of the claims against the CCBOE." County Mem. at 11. County Mem. at 11. *See also* Christian Mem. at 15–16.

The Court agrees. Because official-capacity suits are "essentially" claims "against the [entity]," official-capacity claims "should be dismissed as duplicative" when the entity is also named as a defendant. *Love-Lane Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). *See also Mays*, 2022 WL 17637616 at *5–*6; *Talley v. City of Charlotte*, 2016 WL 8679235, at *13 (W.D.N.C. Jul. 22, 2016) (applying rule to non-§ 1983 claims); *Gholson v. Benham*, 2015 WL 2403594, at *3 n.5 (E.D. Va. May 19, 2015) (same).

Here, O.W. asserts three claims against both CCBOE and the Individual Defendants: Count I (Negligence), *see* Compl. ¶¶ 80–98; Count IV (WVHRA), *see id.* ¶¶ 125–42; and Count X (Loss of Filial Consortium), *see id.* ¶¶ 187–91. Although O.W. does not specify in her complaint whether she brings these claims in an individual or official capacity, *see Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995) (granting plaintiffs this ability), she clarifies in her Responses to Defendants' Motions to Dismiss that she brings each claim in *both* capacities, *see* Pl.'s Christian Resp. at 12; Pl.'s County Resp. at 8. *See also Doe v. Cabell Cnty. Bd. of Educ.*, 2022 WL 568344, at *2 (S.D. W. Va. Feb. 24, 2022) (allowing plaintiff to clarify capacities in its response to motions to dismiss).

O.W. cannot do this. None of the Individual Defendants "hold an office separate from" CCBOE. *Mays*, 2023 WL 17637616 at *6. Rather, they are employees of CCBOE. *See* Compl. ¶¶ 5, 7, 9–11 (alleging each Individual Defendant is "an employee and/or agent of Defendant CCBOE"). *See also* W. Va. Code § 18A-2-2 (authorizing CCBOE to hire teachers); *id.* § 18A-2-3 (authorizing CCBOE to hire substitute teachers); *id.* §§ 18A-1-1(e), 18A-2-5 (authorizing CCBOE

to hire education aides and substitute aides). As such, Counts I, IV, and X are, "in reality," claims against CCBOE. *Mays*, 2022 WL 17637616 at *6.

Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss Count I, Count IV, and Count IX to the extent they plead official capacity claims against the Individual Defendants.

**B**

Defendants argue O.W. cannot seek punitive damages because of W. Va. Code § 29-12A-7. *See* Christian Mem. at 9; County Mem. at 11–12. The Court agrees in part.

Section 29-12A-7 provides: "[i]n any civil action involving a political subdivision . . . an award of punitive or exemplary damages against such political subdivision is prohibited." Although this prohibition is broad, it is not limitless. For example, § 29-12A-7 "does not apply to . . . [c]ivil claims based upon alleged violations of the Constitution or statutes of the United States." W. Va. Code § 29-12A-18(e). Applying these provisions here is straightforward.

Start with O.W.'s claims against the Individual Defendants. In her complaint, O.W. asserts negligence, WVHRA, battery, assault, and tort of outrage claims against the Individual Defendants. *See* Compl. ¶¶ 80–98, 125–142, 171–86. Critically, each of these claims is asserted against the Individual Defendants—not CCBOE. As such, § 29-12A-7's restrictions on punitive damages do not apply. *See P.A.*, 2020 WL 4740481, at *11 (explaining § 29-12A-7 does not "prohibit or otherwise limit punitive damages against employees of political subdivisions"); *Webb v. Raleigh Cnty. Sherriff's Dep't*, 761 F. Supp. 2d 378, 395–96 (S.D. W. Va. 2010) ("[U]nder a plain reading of [§ 29-12A-7], its terms do not limit punitive damages against the employees of a subdivision."); W. Va. Code § 29-12A-3(c) (classifying "county board[s] of education" as "political subdivisions"). As a result, O.W. can seek punitive damages against the Individual Defendants for these claims. *See, e.g.*, *Perrine v. E.I. Du Pont de Nemours & Co.*, 694 S.E.2d 815,

919 (Ketchum, J., concurring) (W. Va. 2010) (allowing punitive damages for "negligence which is gross, reckless, or wanton") (citation omitted); *Haynes v. Rhone-Poulenc, Inc.*, 521 S.E.2d 331, 348 (W. Va. 1999) (allowing punitive damages for WVHRA claims where defendant acted "maliciously, oppressively, wantonly, willfully, recklessly, or with criminal indifference to civil obligations"); *Robinette v. Judy*, 2015 WL 7272378, at *6 (N.D. W. Va. Apr. 28, 2015) (suggesting punitive damages are permitted for assault, battery, and IIED claims asserted against political subdivisions employees sued in their individual capacities); *Tudor v. Charleston Area Med. Ctr.*, 506 S.E.2d 554, 575 (W. Va. 1997) (allowing punitive damages alongside tort of outrage damages where a plaintiff presents "substantial and concrete" evidence of its "serious physical, emotional[,] or psychiatric injury arising out of the intentional infliction of emotional distress").

Consider next O.W.'s claims against CCBOE. In her complaint, O.W. asserts negligence claims (negligence; negligent training/supervision; and negligent hiring/retention), a WVHRA claim, an Americans with Disabilities Act claim, a Rehabilitation Act claim, and a § 1983 claim against CCBOE. *See* Compl. ¶¶ 80–170, 192–202. The Court finds § 29-12A-7 prevents O.W. from seeking punitive damages for her negligence, WVHRA, Americans with Disabilities Act, and Rehabilitation Act claims. She can, however, seek punitive damages for her § 1983 claim.

Remember—a plaintiff cannot seek punitive damages in suits "involving a political subdivision," W. Va. Code § 29-12A-7, *except*—as relevant here—for "[c]ivil claims based upon alleged violations of the Constitution or statutes of the United States," *id.* § 29-12A-18. Putting this together, this statutory language prevents O.W. from seeking punitive damages for her negligence and WVHRA claims. It also prevents her from seeking punitive damages for her Americans with Disabilities Act and Rehabilitation Act claims. Although these are "[c]ivil claims based upon alleged violations of . . . statutes of the United States," *id.*, the Supreme Court has

made clear punitive damages are unavailable under the ADA and the Rehabilitation Act, *see Barnes v. Gorman*, 536 U.S. 181, 189 – 90 (2002). *See also Constantine v. Rectors, George Mason Univ.*, 411 F.3d 474, 498 n.16 (4th Cir. 2005) ("The Court in *Barnes* held that punitive damages are not available for violation[s] of Title VI, and thus not available for violation[s] of Title II of the ADA or § 504 of the Rehabilitation Act either.").

O.W. can, however, seek punitive damages for her *Monell* claim. Under West Virginia law, county boards of education are "political subdivisions"—not municipalities. *Compare* W. Va. Code § 29-12A-3(c) (classifying county boards of education as "political subdivisions") *with id.* § 29-12A-3(b) (defining "municipality" to mean "any incorporated city, town[,] or village and all institutions, agencies[,] or instrumentalities of a municipality"). *Accord C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 769 (W. Va. 2021) (holding the exceptions to § 29-12A-7 apply to "political subdivisions" including county boards of education); *Doe v. Logan Cnty. Bd. of Educ.*, 829 S.E.2d 45, 51 (W. Va. 2019) ("The Board is a political subdivision whose liability for negligence is governed by the Tort Claims Act, W. Va. Code §§ 29-12A-1 to -18."). *Cf. McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 795–96 (1997) (recognizing states have "wide authority to set up their state and local governments as they wish" for § 1983 purposes).

Because CCBOE is a political subdivision of the State of West Virginia, O.W. can seek punitive damages against it in her *Monell* claim. *See P.A.*, 2020 WL 4740481 at *11 ("[B]ecause Plaintifffs have plead a plausible § 1983 claim against Defendant [Fayette County Board of Education], the Court finds that the prohibition on punitive damages does not apply to FCBOE at this stage."). *Cf. Davis v. Milton Police Dept.*, 2020 WL 2341238, at *8 (S.D. W. Va. May 11, 2020) (Chambers, J.) (explaining § 29-12A-7 stops plaintiff from recovering punitive damages from the Milton Police Department "on any of his state law theories" and "federal constitutional

claims" because "municipalities are immune from punitive damages under § 1983") (citing *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981)).

Accordingly, the Court **GRANTS IN PART**, **DENIES IN PART** Defendants' Motions to Dismiss O.W.'s request for punitive damages. O.W. can seek punitive damages for her claims against the Individual Defendants and her § 1983 claim against CCBOE. She cannot, however, seek punitive damages for her negligence, WVHRA, Americans with Disabilities Act, and Rehabilitation Act claims against CCBOE.

## CONCLUSION

The Court **GRANTS IN PART**, **DENIES IN PART** Defendant Deborah Christian's Motion to Dismiss, *see* ECF No. 8, and **GRANTS IN PART**, **DENIES IN PART** Defendants' Cabell County Board of Education, Ronald Mayes, Amby Gisbon-Clay, and John and Jane Does 1–2's Partial Motion to Dismiss, *see* ECF No. 10.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   July 17, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE